UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| TERRANCE JOHNSON, #317128,                )<br>                    Plaintiff,    )<br>                                           )   No. 2:19-cv-260<br>-v-                                        )<br>                                           )   Honorable Paul L. Maloney<br>UNKNOWN BURY, et al.,                      )<br>                    Defendants.   )<br>                                           ) | |

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (**PLRA**), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will allow amendment on Plaintiff's First Amendment retaliation claim, but dismiss the remainder of the complaint for failure to state a claim.

### Discussion

I.   **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County,

Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Corrections Officer Unknown Bury, Classification Director Doug Besteman, and Librarian Gary Baier.

Plaintiff alleges that he began working as a law library clerk on November 9, 2017, at KCF. Not long after, Plaintiff began to experience harassment from Defendant Bury. On December 29, 2017, which was Plaintiff's day off work, he was called to the officer's desk and told that Defendant Bury was asking about his absence from work. Plaintiff explained that the schedule had been in place for a long time and that Defendant Bury should be aware of it. Later that night, Plaintiff was reviewed on an "out of place" misconduct written by Defendant Bury. Plaintiff was found not guilty of the misconduct because his supervisor, Regina Kemp, explained the schedule rotation to the Hearing Investigator. Defendant Bury continued to harass Plaintiff, who complained to his supervisor and to acting Deputy Warden Corrigan.

On April 8, 2018, Defendant Bury threatened to fire Plaintiff and needlessly harassed him, prompting Plaintiff to write a letter to Warden Duncan Maclaren. The next day, Plaintiff reported to work and was told that Defendant Besteman was suspending Plaintiff from his work assignment on the recommendation of Defendant Bury. Plaintiff was never given a reason for the suspension. On April 13, 2018, Plaintiff wrote a grievance on Defendant Bury. On April 21, 2018, Plaintiff asked Officer Bonnee about his suspension. Bonnee contacted the control center and later informed Plaintiff that he would be going back to work the next day and would be compensated for the days he was suspended.

On April 25, 2018, Plaintiff attended a Warden's Forum meeting and spoke about his ongoing issues with Defendant Bury. The Acting Deputy Warden told Plaintiff that he would look into the situation. Later that day, Plaintiff's supervisor asked him if he had received a copy of the work report written by Defendant Bury. Plaintiff asked for a copy and his supervisor, Regina Kemp, told him he would be getting a copy. Ms. Kemp also said that she did not agree with the report and would not allow it to be placed in Plaintiff's file. On April 27, 2018, there was another incident between Plaintiff and Defendant Bury. Plaintiff complained to Sgt. Kagey, who told Plaintiff to play nice and that continuing to complain would not do him any good.

On May 1, 2018, Plaintiff asked Ms. Kemp to contact Defendant Besteman because he still had not received a copy of his work report. Ms. Kemp stated that Defendant Besteman had taken her copy. When Plaintiff met with Defendant Besteman on May 3, 2018, he said that all copies of the work report had been shredded. On May 8, 2018, he wrote a grievance on Defendant Besteman for destroying the work report.

On June 7, 2018, Plaintiff reported for work, but realized that he had forgotten his itinerary. Plaintiff asked Defendant Bury if he could retrieve it from the housing unit because she would not allow Plaintiff to work without it. Defendant Bury told Plaintiff he could, but when Plaintiff returned, Defendant Bury wrote a misconduct on him for being out of place. Plaintiff later told Sgt. Beaulieu that he had permission to return to the housing unit and asked for a review of the camera footage. Sgt. Beaulieu refused to look at the camera footage, so Plaintiff decided to plead guilty because he did not have any available remedy for Defendant Bury's harassment.

On June 20, 2018, Plaintiff again raised his issues with Defendant Bury, to no avail. On October 8, 2018, Defendant Bury wrote another false misconduct report on Plaintiff "because she was upset and gave [Plaintiff] a 'direct order' to explain what legal document he was about to retrieve from his unit, even though he had already [gotten] permission to retrieve the document from his supervisor." (ECF No. 1, PageID.5.) Plaintiff explained to Defendant Bury that it was a legal document that needed to be notarized and that he did not feel the need to tell her about his legal issues. Defendant Bury told Plaintiff that if he did not give her details, he would not be allowed to return to the building. Plaintiff walked to the library to tell his supervisor about the situation, but he did not leave the building. As Plaintiff neared the library, Defendant Bury shouted that Plaintiff should write another grievance, just as he always did. Defendant Bury wrote a misconduct on Plaintiff for insolence.

On November 8, 2018, Ms. Kemp left KCF and a new librarian was hired. On November 12, 2018, Defendant Baier started as librarian of KCF. On November 14, 2018, Defendant Bury wrote another fabricated misconduct on Plaintiff for being out of place, asserting that he was one minute late for his job assignment, which was to begin at 1715 hours. On November 15, 2018, Plaintiff wrote a grievance on Defendant Bury for continuous retaliation and false misconduct reports. On November 21, 2018, the hearing officer found that Plaintiff had been inside the building for work at 1715:32, but still found Plaintiff guilty of being out of place.

On November 29, 2018, Plaintiff did not receive a work itinerary, but was told to report to the library, where Defendant Baier told Plaintiff that he was being suspended at the recommendation of Defendant Bury. On November 30, 2018, Plaintiff met with Defendant

4

Besteman, who told him that the suspension was due to him receiving two work related misconducts within five weeks.

On December 2, 2018, Plaintiff wrote a grievance on Defendants for conspiring to terminate Plaintiff from his job assignment. On December 3, 2018, Plaintiff was placed on unemployable status. Plaintiff wrote another grievance on December 4, 2018. On December 5, 2018, Plaintiff's appeal of the November 14, 2018, out of place misconduct was granted and the misconduct was discarded. Plaintiff wrote a kite to Defendant Besteman regarding his unemployable status. On December 19, 2018, Deputy Warden Brown assured Plaintiff that he would be removed from unemployable status and that Deputy Warden Brown would see about getting Plaintiff's job back. On December 20, 2018, Deputy Warden Brown told Plaintiff that his job had already been filled, but he would be placed at the top of the list for the next available position in the library, and that he would be compensated from the date of the misconduct to the date of the hearing. Plaintiff protested that he was already being paid for those days because he had worked them. On December 21, 2018, Plaintiff was removed from unemployable status. On March 12, 2018, Plaintiff received a rehearing and was found "not guilty" again for the November 14, 2018, out of place misconduct. Plaintiff never received any compensation, nor did he get his job back.

Plaintiff states that Defendants violated his First Amendment right to be free from retaliation and his Fourteenth Amendment right to procedural due process. Plaintiff seeks compensatory and punitive damages, as well as declaratory and equitable relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was

committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Due process

Plaintiff claims that he received fabricated misconduct tickets for insolence and being out of place in violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA.) Misconducts received for "insolence" and "out of place" are Class II misconducts. *Id.* Therefore, Plaintiff could not have been denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do

not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct convictions.

Plaintiff claims that the loss of his job as a law library clerk violated his procedural due process rights. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

Moreover, it is clear that Plaintiff received due process of law with regard to at least two of his misconduct tickets, as well as with his placement on unemployable status. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to

due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). Plaintiff was found not guilty on two of the misconduct tickets he received. In addition, Plaintiff was removed from unemployable status by Deputy Warden Brown on December 21, 2018. Plaintiff's due process claims are properly dismissed.

**IV.     Retaliation**

Plaintiff claims that Defendants' conduct violated his First Amendment right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the

9

adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that he filed numerous grievances, the first of which he filed after receiving a misconduct ticket from Defendant Bury in April 2018. Plaintiff states that Defendant Bury continued to harass him by writing him misconduct tickets, questioning him about his movements, and threatening to fire him. Plaintiff claims that Defendants Besteman and Baier suspended him from his job at the behest of Defendant Bury, and that Defendant Besteman wrongly placed Plaintiff on unemployable status. However, Plaintiff has not alleged any specific facts beyond temporal proximity showing that the adverse action was motivated, at least in part, by his use of the grievance system.

The Court notes that temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . .*Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of

10

>  retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

Plaintiff alleges that he filed multiple grievances during the relevant time period, each one closely followed by adverse actions by Defendants. While these allegations alone are insufficient to show a retaliatory motive on behalf of any Defendant, they are probative. It appears that Plaintiff may have a successful claim if he can plead other facts showing retaliatory motive. Because this claim may have merit but requires additional factual information, the Court will afford Plaintiff the opportunity to amend this portion of his complaint to include any existing additional facts that show retaliatory motive.

## ORDER

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourteenth Amendment procedural due process claim will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). However, Plaintiff's First Amendment retaliation claim is tenable, and it merits the opportunity to amend that portion of the complaint. Accordingly,

**IT IS ORDERED** that Plaintiff may file an amended complaint concerning the First Amendment retaliation claim within 28 days of the date of this order.

**IT IS FURTHER ORDERED** that all other claims are dismissed.

**IT IS SO ORDERED.**

Date: March 2, 2020                             /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge