UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TERRANCE JOHNSON,

        Plaintiff,               Case No. 2:19-cv-260

v.                                    Honorable Paul L. Maloney

UNKNOWN BURY et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Besteman and Baier for failure to state a claim.

## Discussion

**I.    Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County,

Michigan. The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Corrections Officer Unknown Bury, Classification Director Doug Besteman, and Librarian Gary Baier.

An opinion was issued in this case on March 2, 2020, dismissing all claims except for Plaintiff's retaliation claims against Defendants Bury, Besteman, and Baier. (ECF No. 4.) The Court noted that although Plaintiff had failed to allege sufficient facts to adequately show retaliatory motive, it appeared that Plaintiff might be able to provide additional factual information in support of such a motive. Plaintiff was given 28 days to file an amended complaint regarding his retaliation claims.

Plaintiff filed his amended complaint on March 25, 2020. (ECF No. 5.) In his amended complaint, Plaintiff alleges that he began working in the law library in October of 2017. Not long after, Plaintiff began to experience harassment from Defendant Bury because Plaintiff had associated with another clerk who was already being targeted because of prior grievances. Plaintiff spoke with his work supervisor, Librarian Regina Kemp, regarding Defendant Bury's conduct toward Plaintiff. Ms. Kemp told Plaintiff that she would speak to Defendant Bury. On December 29, 2017, Defendant Bury wrote a false misconduct on Plaintiff because she was upset that Plaintiff had spoken to Ms. Kemp. Plaintiff was found not guilty of the misconduct.

On April 8, 2018, Plaintiff and another law clerk, Inmate Majied, were finishing their work assignments and were closing the library for the day. Defendant Bury yelled at Plaintiff about leaving without Majied, and Plaintiff stated that Majied was right behind him shutting off the lights. Defendant Bury yelled that he did not care, and that Plaintiff was not to leave without Majied. Inmate Majied then walked out of the library and told Defendant Bury that he was shutting off the lights. However, Defendant Bury continued to yell at Plaintiff. Plaintiff stated that he was

2

going to file a grievance on Defendant Bury, and Defendant Bury responded by stating, "Oh you're going to write a grievance huh? Well I should just fire you right now." (ECF No. 5, PageID.43.) That night, Plaintiff wrote a letter to the Warden detailing Defendant Bury's conduct.

The next day, Plaintiff was told that Defendant Bury had requested Plaintiff's suspension from work. Plaintiff was suspended until April 22, 2018. When Plaintiff returned to work, Defendant Bury gave him a grimace, showing her disappointment that Plaintiff was back at work. Other inmates told Plaintiff that the only way that Defendant Bury would stop was if he wrote grievances on her.

On April 25, 2018, Plaintiff attended a Warden's Forum meeting and spoke about his ongoing issues with Defendant Bury. Acting Deputy Warden Huhtala told Plaintiff that he would speak to Defendant Bury. Later that day, a work report appeared that related to Defendant Bury's earlier request that Plaintiff be suspended. However, the report was later destroyed. On April 27, 2018, Plaintiff saw Defendant Bury in the hallway and attempted to step out of her way. However, each time Plaintiff moved, Defendant Bury moved in front of him. Defendant Bury stated that she had the right of way, and that when Plaintiff saw her coming, he needed to move. Plaintiff asked Sgt. Kagey to check the cameras to corroborate what happened, but Kagey refused. Plaintiff told Ms. Kemp about the incident and she said that she would speak to her supervisor about Defendant Bury.

In the first part of May, after Ms. Kemp spoke to her supervisor, Defendant Bury's harassment of Plaintiff escalated. In mid-May or early June, Defendant Bury ordered Plaintiff to get off of a computer in the library, even though Ms. Kemp allowed clerks to use the computers as long as there were no patrons in need of help and the desk was covered. Plaintiff complained

3

about this issue until Ms. Kemp finally changed the rule to only allow clerks to use the computers at certain times, usually when Defendant Bury was not present.

On June 20, 2018, Plaintiff spoke with administration about Defendant Bury. Less than a week later, Defendant Bury began to complain to Ms. Kemp that Plaintiff was arriving to the school building a minute or two after his start time. Plaintiff states that the long-standing rule in place at the time allowed a ten-minute grace period. Because Defendant Bury would not allow Plaintiff inside the school building until his start time regardless of the weather, Plaintiff would not leave the unit until his start time. Eventually the administration changed the rule for the school building only, to state that the grace period was for ten minutes before the start time. Corrections Officer Bonnee, the school building regular first shift officer, stated that he did not want to change the rule because it was only a problem for Defendant Bury. When talking to Plaintiff, Defendant Bonnee stated, "You've really pissed her off, didn't you Johnson?" (*Id.* at PageID.44.) Plaintiff states that most of the staff and inmates as KCF were aware that Defendant Bury was targeting Plaintiff because of his grievances.

Plaintiff states that when the newly appointed Warden made rounds, he spoke to the Warden about Defendant Bury. The Warden assured Plaintiff that he would address the issue with Defendant Bury. Defendant Bury did not bother Plaintiff for a week after that. Some time later, Defendant Bury began complaining to Ms. Kemp about Plaintiff taking 20 minutes to go to his assigned/detailed Warden Forum food testing assignment. Plaintiff had been attending this assignment for weeks with no complaints. Eventually Defendant Bury made the same complaint to administration. Plaintiff told Ms. Kemp that he was going to quit his job assignment because he was worried that Defendant Bury would become more extreme in her harassment of him. Ms. Kemp encouraged Plaintiff not to quit because he was not doing anything wrong.

Defendant Bury continued to harass Plaintiff and he sought help from Psychologist LeDoux. During this period, Plaintiff was stopped by Officer Baker, who said, "Hey Johnson, I don't know what you did to Bury, but when we were walking through the gates she told me that she was going to get you." (*Id.* at PageID.45.) Plaintiff stated that if Defendant Bury would just leave him alone, he would stop writing grievances on her. Defendant Baker said that Plaintiff had better be careful. Plaintiff subsequently did everything he could to avoid a confrontation with Defendant Bury, checking in at the officer's desk with his itinerary and going straight to work without making eye contact or speaking. Defendant Bury complained to Ms. Kemp that Plaintiff was displaying an attitude toward her.

On October 8, 2018, Defendant Bury wrote another false misconduct report on Plaintiff because he would not reveal what legal document he was about to retrieve from his unit, even though he had already gotten permission to retrieve the document from his supervisor. Defendant Bury told Plaintiff that he should write another grievance, just as he always did. On October 15, 2018, Plaintiff wrote a grievance on Defendant Bury. Plaintiff later spoke with Assistant Deputy Warden Brown, who told Plaintiff to write a kite about the situation. Plaintiff complied. Within the same week, Officer Corrigan told Plaintiff that he had pissed Defendant Bury off and that the grievances must be working.

Defendant Bury did not bother Plaintiff for ten days after he spoke to Assistant Deputy Warden Brown. However, after that, she began allowing Inmate Majied to enter the library before the start time on cold days but would make Plaintiff wait outside. Plaintiff complained to Ms. Kemp.

On November 8, 2018, Ms. Kemp had her last day at KCF before leaving to work elsewhere. Plaintiff told her that he believed he would be fired after she left. Ms. Kemp said that

she would speak to Defendant Bury before she left, but Plaintiff told her that it would only make things worse. However, Ms. Kemp insisted. On November 14, 2018, Defendant Bury wrote another fabricated misconduct on Plaintiff for being out of place, after Defendant Bury made Plaintiff wait to pass the metal detector to enter the school building. Plaintiff wrote a grievance on Defendant Bury for continuous retaliation and false misconduct reports. Plaintiff was found guilty of the misconduct. Plaintiff appealed the finding.

On November 28, 2019, Defendant Bury told Plaintiff to have a nice day and smiled at him as he was leaving his work assignment. On November 29, 2018, Plaintiff found out that he had been suspended from his work assignment. Plaintiff later found out that he was terminated. Plaintiff later discovered that Defendant Bury had written a work report on him which contained false information, including that he was responsible for a tense environment with other law clerks. Plaintiff attaches copies of affidavits of his fellow law clerks which state that Plaintiff was a model law clerk and that any tension was the result of Defendant Bury's unprofessional behavior. (ECF No. 5-1.)

On December 2, 2018, Plaintiff wrote a grievance. On December 3, 2018, Plaintiff was placed on unemployable status. Plaintiff claims that he and Defendant Besteman had a previous conflict related to a grievance Plaintiff had written on him. Sometime in February of 2019, as Plaintiff was leaving the school building after picking up photocopies, he spoke to a Corrections Officer Plaintiff names as Ms. P. Ms. P asked Plaintiff if he was still working in the law library and Plaintiff said that he was not. Defendant Bury laughed and stated, "No he thought he could write grievances on me and get away with it." (ECF No. 5, PageID.47.)

Plaintiff states that the only tickets he has received are from Defendant Bury, who targeted Plaintiff because he was the only inmate putting up a fuss over her harassment. Plaintiff

fails to specify the relief he is seeking in his amended complaint, but in his original complaint, Plaintiff stated that he was seeking damages and equitable relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

7

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Retaliation

As noted above, Plaintiff claims that Defendants' conduct violated his First Amendment right to be free from retaliation. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Initially, the Court notes that Plaintiff fails to allege any facts regarding Defendant Baier in his amended complaint. With regard to Defendant Besteman, Plaintiff claims that he and Defendant Besteman had an existing conflict because of a grievance Plaintiff had previously filed on him. Plaintiff alleges that after he was terminated from his job as a result of Defendant Bury's actions, Defendant Besteman had him placed on unemployable status. However, Plaintiff fails to allege any specific facts showing that the adverse action was motivated, at least in part, by his use of the grievance system.

8

The Court notes that temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover,

> . . .*Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, No. 2:08-cv-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010).

The fact that Plaintiff had previously filed a grievance on Defendant Besteman does not, without more, show that his conduct was motivated by a desire to retaliate against Plaintiff. As stated above, Defendant Besteman's action followed Plaintiff's termination from his job assignment. In addition, Plaintiff fails to allege any facts regarding Defendant Baier. Therefore, because Plaintiff's retaliation claims against Defendants Besteman and Baier are conclusory, they must be dismissed.

The Court notes that Plaintiff's allegations against Defendant Bury are sufficient to state a retaliation claim against her. Therefore, Plaintiff's retaliation claim may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Besteman and Baier will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's retaliation claim against Defendant Bury remains in the case.

An order consistent with this opinion will be entered.


Dated:　April 8, 2020　　　　　　　　　　　　/s/ Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　　　Paul L. Maloney
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge